**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| YONAS BOKREDINGIL, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA; | ) | **COMPLAINT** |
| DANIEL LAJACK; and | ) | |
| DONALD KOPCHAK, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

Plaintiff, Yonas Bokredingil ("Plaintiff" or "Bokredingil"), by and through undersigned counsel, brings this Federal Tort Claims Act Complaint against the United States of America for tortious acts committed by federal law enforcement officers while acting within the scope of their federal employment. In the alternative, Mr. Bokredingil brings claims pursuant to 42 U.S.C. § 1983 against Daniel Lajack and Donald Kopchak, in their individual capacities, to the extent these defendants are determined to be state actors acting under color and authority of state law.

### NATURE OF THE ACTION

1. Mr. Bokredingil brings this civil action against the United States of America, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.

2. Alternatively, Mr. Bokredingil brings deprivation of rights claims pursuant to 42 U.S.C. § 1983 against Daniel Lajack and Donald Kopchak, in their individual capacities, to the extent these defendants are determined to be state actors acting under color and authority of state law.

3.     On April 26, 2024, Mr. Bokredingil visited a bar in Hinckley, Ohio to relax. Before he was able to finish his first drink, federal task force officers Kopchak and Lajack approached Mr. Bokredingil, a United States citizen, and asked where he was from despite Mr. Bokredingil doing nothing to elicit their suspicions. Because of the color of his skin and the sound of his voice, they targeted Mr. Bokredingil as a suspected "illegal." Despite Mr. Bokredingil being, in fact, a naturalized United States citizen and lawfully employed as a truck driver, the defendants claimed he was "illegal" and a potential terror suspect and therefore needed to be detained for further investigation and potential arrest and removal. Their unwarranted investigation quickly devolved into the violent assault, battery, and false imprisonment of Mr. Bokredingil by the two men. Through this Complaint, Mr. Bokredingil's seeks damages for the physical and emotional pain he suffered that night and continues to suffer.

4.     Kopchak and Lajack's treatment of Mr. Bokredingil led to Lajack's resignation from the DEA and Kopchak's removal from ATF alongside the highly publicized criminal prosecutions of both men in Medina County, Ohio. Lajack pled guilty to attempted abduction, a felony of the fourth degree, and was sentenced to a 90-day term of incarceration. *See Ohio v. Lajack*, Case No. 2025CR0519. Kopchak was found guilty following a jury trial of ethnic intimidation, a felony of the fifth degree, two counts of abduction, felonies of the third degree, and assault, a misdemeanor of the first degree. *See Ohio v. Kopchak*, Case No. 2025CR0520. Kopchak was remanded into the State's custody following the verdict and is awaiting sentencing.

**PARTIES**

5.     Plaintiff Yonas Bokredingil is a United States citizen and a resident of the State of Texas. He became a citizen in 2018. Mr. Bokredingil has worked as a truck driver for Saron Trucking LLC for four years.

6.     The United States is the proper Defendant in this tort action and shall be liable in the same manner and to the same extent as any private individual under like circumstances. *See* 28 U.S.C. § 2674. This civil action seeks damages against the United States under applicable Ohio state and common law.

7.     Defendant Donald Kopchak, upon information and belief, was, at all relevant times, a deputized Task Force Officer for the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and a police officer with the Cleveland, Ohio Division of Police Department.

8.     Defendant Dan Lajack, upon information and belief, was, at all relevant times, a deputized Task Force Officer for the Drug Enforcement Agency ("DEA"), and an agent for the Lake County, Ohio Sheriff's Narcotics Agency.

**JURISDICTION & VENUE**

9.     This Court has exclusive jurisdiction over this civil action for personal injury caused by the negligent or wrongful acts or omissions of federal employees while acting within the scope of their office or employment. *See* 18 U.S.C. § 1346(b). The tortious conduct giving rise to this civil action occurred in the Northern District of Ohio. *See* 18 U.S.C. § 2674. Substantive state law governs the merits of this FTCA action.

10.    The factual bases underlying the tort claims herein alleged were timely presented in writing to the ATF and the DEA within two (2) years after such claims accrued and were finally denied by the agencies on March 5, 2026, and March 31, 2026, respectively. *See* 18 U.S.C.

§ 2675(a). This action commenced within six (6) months after the date of mailing of the ATF and the DEA's final denial of the administrative tort claim. *See* 18 U.S.C. § 2401(b).

11.     Pursuant to 28 U.S.C. § 1331, this Court has federal question jurisdiction over Mr. Bokredingil's alternative claims against the individual Defendants for deprivation of rights under 42 U.S.C. § 1983.

### FACTUAL ALLEGATIONS

12.     Plaintiff, Yonas Bokredingil, was born on December 6, 1985, in Eritrea, Africa. He is married and a father to his one-year-old son.

13.     In 2004, Mr. Bokredingil fled Eritrea for Ethiopia where he remained as a refugee for five years.

14.     In 2009, Mr. Bokredingil moved to the United States and settled in Dallas, Texas.

15.     In or around 2018, Mr. Bokredingil obtained his United States citizenship through naturalization.

16.     For approximately four years, up to and including present day, Mr. Bokredingil has been employed as a truck driver for Saron Trucking, LLC based in Houston, Texas.

17.     On April 24, 2024, Mr. Bokredingil drove his truck from Texas to Hinckley, Ohio, where he was scheduled to make a delivery to a local grocer.

18.     Upon arrival, Mr. Bokredingil was advised the off-loading of his cargo had been rescheduled for four (4) days later, and that he was to remain in the area with his cargo until then.

19.     For the first two (2) days, Mr. Bokredingil remained with his cargo and slept in the sleeper cab of his truck and at a motel.

20.     On April 26, 2024, between about 9:00 p.m. and 9:30 p.m., Mr. Bokredingil walked to a nearby gas station for something to eat. Mr. Bokredingil spotted the Buzzard's Roost Bar

Sports Bar ("Buzzard's Roost"), in Hinkley, Medina County, Ohio, in the Northern District of Ohio, and decided to go to the bar instead of the gas station.

21.     Based on information and belief, ATF task force officer Donald Kopchak and DEA task force officer Daniel Lajack arrived at the bar, already intoxicated, a short time after Mr. Bokredingil, accompanied by two others. The group ordered drinks from the bartender and sat in the bar area.

22.     At all times relevant to this Complaint, Lajack and Kopchak were both federally deputized task force officers, Lajack with the DEA and Kopchak with the ATF. Lajack was employed as an agent of the Lake County Narcotics Agency. Kopchak was an officer with the Cleveland, Ohio Division of Police. Pursuant to 5 U.S.C. § 3374, an employee of a State or local government may be assigned to a Federal agency. During the period of assignment, the State or local government employee on detail to a Federal agency is deemed an employee of the agency for purposes of the FTCA and any other Federal tort liability statute. *See* 5 U.S.C. § 3374(c)(2).

23.     For a time, Mr. Bokredingil sat at the bar and enjoyed small talk with two other bar patrons.

24.     Soon thereafter, Lajack and Kopchak left their table and approached Mr. Bokredingil. The pair began asking Mr. Bokredingil investigatory questions such as, "why are you here," "where are you from," and "are you illegal?"

25.     Mr. Bokredingil explained that he was a United States citizen, in town for work, and that his truck was parked at the grocery store to which he was scheduled to make a delivery. Lajack and Kopchak then demanded Mr. Bokredingil show them his identification. Mr. Bokredingil refused. When they insisted he show his identification, Mr. Bokredingil continuously

5

refused and stated he only needed to show his identification to the police. Mr. Bokredingil even suggested the men should call the police.

26. At this time, Lajack and Kopchak identified themselves as law enforcement officers, displaying their credentials to Mr. Bokredingil and stating they were "working with the police." Mr. Bokredingil understood the credentials to be law enforcement identification.

27. Based on these representations, Mr. Bokredingil understood Lajack and Kopchak were acting under color of law and in their capacity as law enforcement officers in demanding to see his identification and subjecting him to detainment and questioning. Mr. Bokredingil removed his valid Texas driver's license from his pocket and showed it to Lajack and Kopchak.

28. Lajack immediately and forcibly removed Mr. Bokredingil's license from his hand and began taking photos of the license with his cellular telephone, purportedly verifying its authenticity through a law enforcement database. Lajack would later tell responding officers that he sent Mr. Bokredingil's license for verification to the U.S. Customs and Border Protection ("CBP") and Homeland Security Investigations ("HSI").

29. At the same time, Kopchak physically restrained Mr. Bokredingil by grabbing his arm, forcefully twisting it behind his back, while simultaneously placing an arm around Mr. Bokredingil's neck. Lajack then reached into Mr. Bokredingil's pockets and forcibly removed his belongings, including his cellular telephone, keys, and wallet.

30.     Mr. Bokredingil remained falsely and unlawfully arrested in the bar with his arm twisted painfully behind his back and struggling to breathe—with Kopchak's arm around his neck—for several minutes. Mr. Bokredingil pleaded with the two men and asked to be let go as he continued to gasp for air. The men refused to release him, intent on inflicting as much discomfort and pain as possible while their investigation continued.

31.     Out of concern for Mr. Bokredingil's safety, and the unreasonable actions of the defendants, the bartender stepped away to call the police. Upon returning to the bar, the bartender witnessed Kopchak and Lajack physically restraining Mr. Bokredingil.

32.     Based on information and belief, at some point, Lajack stepped outside the bar to call a law enforcement agency to verify Mr. Bokredingil's identification and explanation for being in the area, and to determine his immigration and employment authorization status.

33.     The bartender witnessed Kopchak detain Mr. Bokredingil and force him outside the bar and into the parking lot.

34.     Kopchak and Lajack assured patrons they "knew what they were doing" and suggested Mr. Bokredingil was "going to blow up the bar." Once outside, Kopchak violently forced Mr. Bokredingil to the ground and placed him in a submission hold, while Lajack communicated with a law enforcement agency by phone.

35.     Kopchak and Lajack ordered Mr. Bokredingil to stop moving and advised "law enforcement [wa]s on the way." As shown in the photograph below, Kopchak forcibly detained Mr. Bokredingil in a submission hold until—and well after—local police arrived.[1]



36.     Brunswick, Ohio Police officers eventually arrived at the scene. The responding Brunswick officers, outfitted with body-worn cameras, captured their interactions with Lajack, Kopchak, and Mr. Bokredingil. The officers observed Kopchak detaining Mr. Bokredingil in a self-described leg lock and eventually directed Kopchak to release Mr. Bokredingil.

37.     The responding officers then spoke with the two aggressors.

---

[1] This photograph was taken by an associate of Lajack and Kopchak. Kopchak is detaining Mr. Bokredingil in a painful submission hold despite Mr. Bokredingil's arm appearing limp. Meanwhile Lajack attempts to verify Mr. Bokredingil's immigration status by making phone calls to law enforcement officials.

38. Lajack, who had taken Mr. Bokredingil's possessions, promptly identified himself to responding officers as "DEA," stated Kopchak was with "ATF," and explained the findings of his investigation of Mr. Bokredingil. He told the responding officers he and Kopchak were detaining Mr. Bokredingil because "he's not from this country," his Texas identification was "fake as can be," and he "could be on a [terrorist] watch list."

39. Lajack acknowledged Mr. Bokredingil had not caused a disturbance or acted in a manner that required the two men to take immediate action and restrain Mr. Bokredingil. Instead, Lajack admitted their actions were based entirely on the fact that, according to them, Mr. Bokredingil was "from Israel and had a Texas ID." Despite their claims, Mr. Bokredingil was not in the country illegally, nor did he have any reason to be detained by law enforcement.

40. Lajack advised officers that he "had a call into CBP," and Kopchak advised officers that "Lajack ran [Bokredingil] and found he's illegal." Lajack also reportedly "called HSI."

41. Kopchak identified himself to responding officers as an "ATF TFO" with "Strike Force." He told officers he and Lajack had been drinking at the Buzzard's Roost when they encountered Mr. Bokredingil.

42. Kopchak falsely stated to officers that Mr. Bokredingil tried to fight with him, causing Kopchak to take him to the ground. Kopchak admitted to grabbing Mr. Bokredingil and placing him in a leg lock and holding him in that position until officers arrived.

43. Both Lajack and Kopchak admitted to officers they investigated, forcibly detained, and falsely arrested Mr. Bokredingil because he appeared "illegal," might be on a "watchlist," could carry out a terrorist attack, and "blow up who knows what" if not detained.

44. Lajack repeatedly stated he was not "going to be that guy on the news" or "TMZ" if Mr. Bokredingil "ends up blowing the fucking mall up."

45.     After repeatedly stating he was DEA, Lajack said he had "been doing this job for 25 years" and knew "there's something wrong with that dude."

46.     During this interaction with responding officers, Lajack and Kopchak repeatedly referenced their official federal law enforcement positions.

47.     Both Lajack and Kopchak eventually admitted to the responding Brunswick Police officers that Mr. Bokredingil had not caused a disturbance.

48.     Hinckley, Ohio Police Department officers arrived to relieve the Brunswick Police Department officers and informed Mr. Bokredingil he was free to leave.

49.     Before leaving the scene, local law enforcement officers confirmed the validity of Mr. Bokredingil's Texas driver's license and his legal citizenship status.

50.     In summary, while operating under the color of law, Lajack and Kopchak negligently confronted, wrongfully accused, assaulted, battered, falsely arrested, and falsely imprisoned Mr. Bokredingil based solely on his ethnicity, physical appearance, and their prejudiced belief that he was "illegal."

51.     As a direct and proximate result of Lajack and Kopchak's unlawful and tortious assault and battery, Mr. Bokredingil suffered physical injuries to his arm and neck.

52.     As a direct and proximate result of Lajack and Kopchak's unlawful and tortious assault and battery, Mr. Bokredingil suffered severe emotional distress and continues to suffer from post-traumatic stress, emotional distress, anxiety, a lack of trust in law enforcement, and a pervasive fear that he or his family will be subjected to this abuse again.

53.     As a direct and proximate result of Lajack and Kopchak's racially motivated and illegal actions, Mr. Bokredingil has suffered significant financial harm and lost wages. Mr. Bokredingil is unable to accept long-distance deliveries out of fear an incident like this may happen

again. He now makes local deliveries in Texas. There is a significant difference in pay between long-distance and local deliveries. As such, Mr. Bokredingil has suffered financial damages as a direct and proximate result of this incident.

54.     Upon information and belief, the DEA knew or should have known Lajack was unfit for his role as a federal task force officer but nonetheless hired and retained Lajack. During his employment, the DEA failed to adequately train and supervise Lajack.

55.     Upon information and belief, the ATF knew or should have known Kopchak was unfit for his role as a federal task force officer but nonetheless hired and retained Kopchak. During his employment, the ATF failed to adequately train and supervise Kopchak.

56.     In 2020, Kopchak was disciplined for failing to properly employ de-escalation techniques during an arrest, leading to his suspension. Nonetheless, he retained his status as a deputized task force officer with the ATF.

57.     Following the incident, both men were, upon information and belief, removed from their appointments to federal task forces amid internal investigations.

58.     Lajack was, on information and belief, employed by the Lake County Narcotics Agency before he ultimately resigned from the position.

59.     Kopchak was, on information and belief, employed as a police officer with the Cleveland, Ohio Division of Police.

60.     At all times relevant to this Complaint, Lajack and Kopchak were acting as law enforcement officers under color of federal and/or state law.

61.     In August 2025, a Medina County, Ohio Grand Jury indicted Lajack and Kopchak on multiple felony counts of abduction and ethnic intimidation, as well as misdemeanor assault.

11

62. On February 9, 2026, Lajack pleaded guilty to the lesser-included offense of attempted abduction, a felony of the fourth degree. Lajack was sentenced to 90-days imprisonment followed by two years of probation and 100 hours of community service.

63. On March 27, 2026, following a four-day trial, a Medina County jury found Kopchak guilty on all charges, including two counts of abduction, felonies of the third degree, one count of ethnic intimidation, a felony of the fifth degree, and one count of assault, a misdemeanor of the first degree. He was remanded and will be sentenced on June 11, 2026.

## CLAIMS

### Claim I – Assault

64. Mr. Bokredingil realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein and further alleges as follows.

65. At all times relevant to this count, Lajack and Kopchak were acting within the scope of their employment as federal law enforcement officers of the ATF and the DEA.

66. Lajack and Kopchak intentionally and willfully threatened to harm or offensively touch Mr. Bokredingil.

67. These threats were coupled with definitive, overt acts by Lajack and Kopchak, both of whom had the apparent ability to do the threatened harm and offensive touching.

68. As a result of these threats, Mr. Bokredingil was placed in reasonable apprehension that he would face immediate physical harm at the hands of Lajack and Kopchak.

69. Mr. Bokredingil suffered physical, emotional, and economic damages as a direct and proximate result of the assault for which he may recover compensatory damages.

70.     The United States is liable for the injuries caused to Mr. Bokredingil by Lajack and Kopchak's negligent and wrongful acts while acting within the scope of their employment as federal officers.

71.     Defendants' actions were malicious, in bad faith, performed in a wanton and reckless manner, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### Claim II – Battery

72.     Mr. Bokredingil realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein and further alleges as follows.

73.     At all times relevant to this count, Lajack and Kopchak were acting within the scope of their employment as federal law enforcement officers of the ATF and the DEA.

74.     Lajack and Kopchak intentionally initiated harmful physical contact with Mr. Bokredingil.

75.     Lajack and Kopchak forcibly took Mr. Bokredingil's belongings from his person, twisted Mr. Bokredingil's arm behind his back, choked him, contorted his body, and viciously held him in painful submission holds.

76.     This physical contact caused Mr. Bokredingil significant pain and harm.

77.     Mr. Bokredingil suffered physical, emotional, and economic damages as a direct and proximate result of the battery for which he may recover compensatory damages.

78.     The United States is liable for the injuries caused to Mr. Bokredingil by Lajack and Kopchak's negligent and wrongful acts while acting within the scope of their employment as federal officers.

13

79.    Defendants' actions were malicious, in bad faith, performed in a wanton and reckless manner, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### Claim III – False Imprisonment

80.    Mr. Bokredingil realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein and further alleges as follows.

81.    At all times relevant to this count, Lajack and Kopchak were acting within the scope of their employment as federal law enforcement officers of the ATF and the DEA.

82.    Lajack and Kopchak intentionally and wrongfully confined Mr. Bokredingil by physically restraining him both inside and outside of the bar, forcefully prohibited his movement, and prevented him from leaving.

83.    Mr. Bokredingil did not consent to this restraint or imprisonment.

84.    Neither Lajack nor Kopchak had privilege to confine Mr. Bokredingil.

85.    Mr. Bokredingil suffered physical, emotional, and economic damages as a direct and proximate result of the false imprisonment for which he may recover compensatory damages.

86.    The United States is liable for the injuries caused to Mr. Bokredingil by Lajack and Kopchak's negligent and wrongful acts while acting within the scope of their employment as federal officers.

87.    Defendants' actions were malicious, in bad faith, performed in a wanton and reckless manner, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

14

<u>Claim IV – False Arrest</u>

88.     Mr. Bokredingil realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein and further alleges as follows.

89.     At all times relevant to this count, Lajack and Kopchak were acting within the scope of their employment as federal law enforcement officers of the ATF and the DEA.

90.     Lajack and Kopchak intentionally detained Mr. Bokredingil based on an unreasonable suspicion that Mr. Bokredingil was in the United States illegally, possessed false identification, and was imminently going to commit act(s) of terrorism.

91.     Neither Lajack nor Kopchak had any valid basis to believe that Mr. Bokredingil was in the United States illegally and thus lacked any semblance of probable cause to make this unlawful arrest.

92.     Mr. Bokredingil suffered physical, emotional, and economic damages as a direct and proximate result of the false arrest for which he may recover compensatory damages.

93.     The United States is liable for the injuries caused to Mr. Bokredingil by Lajack and Kopchak's negligent and wrongful acts while acting within the scope of their employment as federal officers.

94.     Defendants' actions were malicious, in bad faith, performed in a wanton and reckless manner, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

<u>Claim V – Intentional Infliction of Emotional Distress</u>

95.     Mr. Bokredingil realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein and further alleges as follows.

15

96. At all times relevant to this count, Lajack and Kopchak were acting within the scope of their employment as federal law enforcement officers of the ATF and the DEA.

97. Lajack and Kopchak's conduct was extreme and outrageous and extended beyond the bounds of human decency—conduct that can be considered utterly intolerable in a civilized society.

98. The actions of Lajack and Kopchak caused Mr. Bokredingil to suffer, and continue to suffer, severe emotional distress.

99. The mental anguish suffered by Mr. Bokredingil is serious and of a nature that no reasonable person could be expected to endure.

100. Mr. Bokredingil suffered physical, emotional, and economic damages as a direct and proximate result of the negligent actions of Lajack and Kopchak for which he may recover compensatory damages.

101. The United States is liable for the injuries caused to Mr. Bokredingil by Lajack and Kopchak's negligent and wrongful acts while acting within the scope of their employment as federal officers.

102. Defendants' actions were malicious, in bad faith, performed in a wanton and reckless manner, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

Claim VI – Negligent Infliction of Emotional Distress

103. Mr. Bokredingil realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein and further alleges as follows.

104. At all times relevant to this count, Lajack and Kopchak were acting within the scope of their employment as federal law enforcement officers of the ATF and the DEA.

16

105.    Lajack and Kopchak owed a duty of care to Mr. Bokredingil.

106.    Lajack and Kopchak caused Mr. Bokredingil to experience a real and impending danger of physical and emotional harm.

107.    The actions of Lajack and Kopchak were negligent and caused physical and emotional harm to Mr. Bokredingil.

108.    The negligent conduct of Lajack and Kopchak directly and proximately caused Mr. Bokredingil to experience and suffer danger of physical and emotional harm.

109.    The United States is liable for the injuries caused to Mr. Bokredingil by Lajack and Kopchak's negligent and wrongful acts while acting within the scope of their employment as federal officers.

110.    Defendants' actions were malicious, in bad faith, performed in a wanton and reckless manner, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

Claim VII – Negligence

111.    Mr. Bokredingil realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein and further alleges as follows.

112.    At all times relevant to this count, Lajack and Kopchak were acting within the scope of their employment as federal law enforcement officers of the ATF and the DEA.

113.    Lajack and Kopchak owed a duty of care to Mr. Bokredingil.

114.    Lajack and Kopchak breached this duty by failing to exercise that degree of care required or expected of a reasonable, prudent federal law enforcement officer acting in the same or similar circumstances.

17

115.    As a direct and proximate result of Lajack and Kopchak's negligence, Mr. Bokredingil suffered severe physical and emotional harm and damages.

116.    Mr. Bokredingil suffered and will continue to suffer economic and non-economic damages, including, but not limited to, emotional distress, pain and suffering, and lost wages.

117.    The DEA knew or should have known Lajack was unfit for his role as a federal task force officer but nonetheless hired and retained Lajack. During his employment, the DEA failed to adequately train and supervise Lajack.

118.    The ATF knew or should have known Kopchak was unfit for his role as a federal task force officer but nonetheless hired and retained Kopchak. During his employment, the ATF failed to adequately train and supervise Kopchak.

119.    The United States is liable for the injuries caused to Mr. Bokredingil by Lajack and Kopchak's negligent and wrongful acts while acting within the scope of their employment as federal officers.

120.    Defendants' actions were malicious, in bad faith, performed in a wanton and reckless manner, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

Claim VIII – 42 U.S.C. § 1983, Unreasonable Search and Seizure

121.    Mr. Bokredingil realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein and further alleges as follows.

122.    In the alternative, and to the extent Lajack and Kopchak are determined to be state actors acting under color and authority of state law, both men deprived Mr. Bokredingil of rights guaranteed to him under the Fourth Amendment to the United States Constitution.

123.    Lajack and Kopchak's actions constituted an unreasonable search and seizure in violation of the Fourth Amendment.

124.    Lajack and Kopchak were acting under color of law at all times relevant to this Complaint and used that authority or power to deprive Mr. Bokredingil of his constitutional rights.

<u>Claim IX – 42 U.S.C. § 1983, Cruel and Unusual Punishment</u>

125.    Mr. Bokredingil realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein and further alleges as follows.

126.    In the alternative, and to the extent Lajack and Kopchak are determined to be state actors acting under color and authority of state law, both men deprived Mr. Bokredingil of rights guaranteed to him under the Eighth Amendment to the United States Constitution.

127.    Lajack and Kopchak's actions constituted excessive use of force in violation of the Eighth Amendment's ban against cruel and unusual punishment.

128.    Lajack and Kopchak were acting under color of law at all times relevant to this Complaint and used that authority or power to deprive Mr. Bokredingil of his constitutional rights.

<u>Claim X – 42 U.S.C. § 1983, Violation of Due Process and Equal Treatment</u>

129.    Mr. Bokredingil realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein and further alleges as follows.

130.    In the alternative, and to the extent Lajack and Kopchak are determined to be state actors acting under color and authority of state law, both men deprived Mr. Bokredingil of rights guaranteed to him under the Fourteenth Amendment to the United States Constitution.

131.    Lajack and Kopchak's actions deprived Mr. Bokredingil of his absolute right to due process and equal treatment under the laws of the United States and the State of Ohio.

132.    Lajack and Kopchak were acting under color of law at all times relevant to this Complaint and used that authority or power to deprive Mr. Bokredingil of his constitutional rights.

### PRAYER FOR RELIEF

Wherefore, Mr. Bokredingil demands judgment against the Defendants and prays for the following relief:

1.    Compensatory damages for non-economic losses under the FTCA and State law;

2.    Compensatory damages for economic losses under the FTCA and State law;

3.    Compensatory damages for non-economic losses under 42 U.S.C. § 1983;

4.    Compensatory damages for economic losses under 42 U.S.C. § 1983;

5.    Punitive damages for economic losses under 42 U.S.C. § 1983; and

6.    Such relief as the Court deems appropriate and just.

### JURY TRIAL DEMAND

Plaintiff hereby requests a trial by jury on all claims so triable.

Respectfully submitted,

Date: April 24, 2026

*/s/ Paul M. Flannery*
Paul M. Flannery (0091480)
Christopher J. Joyce (0086576)
Matthew R. Hosler (0106383)
**FLANNERY | GEORGALIS, LLC**
1621 Euclid Avenue, Floor 20
Cleveland, Ohio 44115
(216) 466-0162 (Paul)
(216) 466-0416 (Chris)
(216) 493-9686 (Matt)
paul@flannerygeorgalis.com
cjoyce@flannerygeorgalis.com
mhosler@flannerygeorgalis.com

*Counsel for Plaintiff*